## Rosenblatt, Appellant, *v.* Weinman.

*Contract—Indemnity—Profits—Losses—Stock transaction—Practice, C. P.—Sufficiency of statement—Affidavit of defense.*

1. A contract of indemnity against loss in certain stocks and other securities in consideration of the privilege of sharing in expected profits, wherein no date is fixed for the termination of the contract, gives either party a right to end it at his pleasure providing good faith be observed.

2. Where in such a case the party indemnified sues the indemnifier for a sum representing the difference between the cost of the securities and their market rating on the stock exchange on a certain date, claiming that on such date the plaintiff gave positive and unequivocal notice to the defendant of the termination of the contract, the plaintiff is not entitled to judgment for want of a sufficient affidavit of defense, when the statement of claim filed admits that notwithstanding the notice of a termination of the contract the plaintiff continued thereafter to hold the securities in his own name, and that they remained unconverted at the time of the bringing of the action, and it is not claimed that the retention of the securities was pursuant to an understanding or agreement with the defendant.

3. When a pledgee sells stock upon notice he is disqualified from purchasing the stock.

4. To entitle a plaintiff to judgment for want of a sufficient affidavit of defense, the statement of the demand under the Act of May 25, 1887, P. L. 271, must be self-sustaining.

Argued Jan. 10, 1911. Appeal, No. 309, Jan. T., 1910, by plaintiff, from order of C. P. No. 5, Phila. Co., March

Term, 1910, No. 772, discharging rule for judgment for want of a sufficient affidavit of defense in case of Lizzie Rosenblatt to use of Benjamin Rosenblatt v. Harry Weinman. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Assumpsit on a contract of indemnity.

The facts appear in the opinion of the Supreme Court.

*Error assigned* was order discharging rule for judgment for want of a sufficient affidavit of defense.

*Emanuel Furth,* with him *David Bortin,* and *Jacob Singer,* for appellant, cited: Plumly v. Plumly, 6 Pa. C. C. Rep. 72; McGough v. Jamison, 4 Penny. 154; Sigua Iron Co. v. Vandervort, 164 Pa. 572.

*Julius C. Levi,* for appellee, cited: Vogt v. Cope, 66 Cal. 31 (4 Pac. Repr. 915); Weightman v. Union Trust Co., 208 Pa. 449; Central Trust Co. v. Trust Co., 100 Fed. Repr. 545; Marston v. Gould, 69 N. Y. 220; Rosenblum v. Stolzenberg, 36 Pa. Superior Ct. 644; Bill Posting Sign Co. v. Jermon, 27 Pa. Superior Ct. 171; Tourison v. Engard, 30 Pa. Superior Ct. 179; New York Trust Co. v. Langcliffe Coal Co., 227 Pa. 630.

OPINION BY MR. JUSTICE STEWART, February 27, 1911:

The contract out of which this action arises was before us for consideration in Rosenblatt v. Weinman, 225 Pa. 200, the parties to that controversy being the same as here. We held it to be a contract of indemnity against loss in certain stocks and other securities in consideration of the privilege of sharing in expected profits; that no date having been fixed for the determination of the contract, it rested with either party to end it at his pleasure, providing good faith be observed. The only question in the former case was whether the plaintiff, who had possession and control of the securities, had by positive act or dec-

laration terminated the contract relation. All that there appeared was, that at the time when the market value of the securities was much below the price at which they were purchased, the plaintiff said to the defendant that he wanted the transaction closed out; that he wanted the money and not the securities; that defendant remonstrated and asked that the securities be held for a rise in the market. We held that this was not sufficient to charge the defendant with loss as shown by the market quotations on the day on which this conversation occurred; that instead of being a notice of a determination to end the contract relation, it indicated acquiescence in the defendant's demand for continuance of the relation, "especially in view of the fact that plaintiff continued to retain both the stock and bonds." Following our decision in that case the plaintiff began the present suit claiming that on another and later date, to wit, November 27, 1906, he gave positive and unequivocal notice to the defendant of the termination of the contract, accompanying it with a demand for the sum of $2,360.50, the difference between cost of the securities and their market rating on the Philadelphia Stock Exchange on that date. The statement of claim filed admits that notwithstanding this notice of a termination of the contract, the plaintiff continued thereafter to hold the securities in his own name and that they remained unconverted at the time of the bringing of the present action. It is not claimed that the retention of the securities was pursuant to an understanding or agreement with the defendant, but it is insisted that, without any agreement to this effect, it was the plaintiff's right to retain the securities and charge the defendant with their depreciation as shown by the market reports on the day he made demand. The question here raised, while not directly passed upon in the former case, falls clearly within the spirit and the reasoning of the ruling there made. Our emphasis in that case of the fact that plaintiff had retained the securities unconverted was to show acquiescence on his part in defendant's demand for

a continuance of the relation.  The clear implication from the language used in the opinion is, that the retention of the securities was wholly inconsistent with the claim that the relation had been dissolved; and so it is and must be. To meet the question directly, we now say that it is not only inconsistent with such claim, but is conclusive against it.  When the defendant handed over to the plaintiff the securities in which the money had been invested, and which the former had held in his own name for a whole year, a relation was created which called for the exercise of the utmost good faith on the part of the plaintiff.  The latter had then become the holder of the securities and the defendant's written obligation as well.  While, strictly speaking, it cannot be said that the relation was that of pledgor and pledgee, yet in its essential features it so closely approaches that we fail to see why the rules governing that relation should not be applied here.  The ultimate liability of the defendant, in amount, depended on what the securities yielded.  In all such cases, except where there is express agreement to the contrary, the extent of the party's liability can only be determined by sale made in the open market upon notice, from which the party selling is excluded as a purchaser.  In other words, it is well established that when a pledgee sells stock upon notice, he is disqualified from purchasing the stock.  The rule is based upon the principle that the pledgee owes a duty to the pledgor and will not open the door to possible devices of the pledgee for the purchasing the stock for himself at a low price: 2 Cook on Corporations (6th ed.), sec. 479. In Diller v. Brubaker, 52 Pa. 498, it is expressly held that a pledgee or a holder of a collateral security cannot appropriate it in satisfaction of the debt intended to be secured at his own option, unless, in pursuance to a contract to that effect; nor sell it without first giving notice to the pledgee of his intention to do so, in order that he may have an opportunity to redeem it if he so desire, and that the sale must be public when it is made.  All the considerations which give rise to these rules governing pledgees are

present here, and the case calls for the application of these rules. In view of what we have said as to the law, this statement of claim shows no cause of action, it being admitted therein that the securities had been appropriated by the plaintiff. It results that judgment for want of sufficient affidavit of defense was properly refused. "To entitle a plaintiff to judgment for want of a sufficient affidavit of defense, the statement of his demand under the Act of May 25, 1887, P. L. 271, must be self-sustaining; that is to say, it must set forth in clear and concise terms a good cause of action, by which is meant such averments of facts as, if not controverted, would entitle him to a verdict for the amount that is claimed:" Chestnut St. Nat. Bank v. Ellis, 161 Pa. 241.

The appeal is dismissed.